Case 2:13-cv-05013-EFS    Document 60   ~~XXNOTXXXNXXXXXDOCKETXX~~    Filed 02/28/17

1  CHAD A. READLER
   Acting Assistant Attorney General
2  DON WILLIAMSON
   Senior Trial Counsel
3  KATE BUSHMAN SMITH
   ALEXANDRA N. WILSON
4  Trial Attorneys; Commercial
   Litigation Branch, Civil Division
5  United States Department of Justice
   P.O. Box 261; Ben Franklin Station
6  Washington, DC  20004
   Phone: (202) 353-1293
7  Fax: (202) 514-0280

8  MICHAEL C. ORMSBY
   United States Attorney
9  TYLER H.L. TORNABENE
   Assistant United States Attorney
10 Post Office Box 1494
   Spokane, WA 99210-1494
11 Telephone: (509) 353-2767
   Fax: (509) 835-6397
12 Attorneys for United States of
   America
13

14              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON
15

16  UNITED STATES OF AMERICA, *ex rel.*,
    GARY BRUNSON, DONNA BUSCHE-         NO.  CV-13-5013-EFS
17  GIESA, AND WALTER TAMOSAITIS,
    PH.D.,                              UNITED STATES'
18              Plaintiff,              POSITION STATEMENT IN
                                        RESPONSE TO THE
19        v.                            COURT'S FEBRUARY 9,
                                        2017 ORDER
20  BECHTEL NATIONAL INC., BECHTEL
    CORPORATION, URS CORPORATION,
21  AND URS ENERGY &                    ~~FILED UNDER SEAL~~
    CONSTRUCTION, INC.,
22
                Defendants.
23

24      The United States files the following position statement in response to the

25  Court's Order dated February 9, 2017 (ECF No. 48), as amended, by Order dated

    February 16, 2017 (ECF No. 50).

    UNITED STATES' POSITION STATEMENT                                    1
    IN RESPONSE TO THE COURT'S
    FEBRUARY 9, 2017 ORDER

Case 2:13-cv-05013-EFS    Document 60 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

On February 9, 2017, pursuant to the terms of paragraph 9 of the November 22, 2016 Settlement Agreement[1] among the United States, the Defendants and the Relators, the United States and the Relators filed a Joint Stipulation of Dismissal (ECF No. 44) pursuant to Federal Rule of Civil Procedure 41(a)(1).  The Rule provides in relevant part:

> Rule 41. Dismissal of Actions
> (a) Voluntary Dismissal.
>   (1) *By the Plaintiff.*
>     (A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
>         . . .
>         (ii) a stipulation of dismissal signed by all parties who have appeared.

When the stipulation of dismissal was filed, the only parties who had appeared in the action were the United States and the Relators.  Thus, pursuant to the Rule, only the United States and the Relators signed the stipulation through their respective counsel.[2]

_____

[1] The November 22, 2016 Settlement Agreement is attached as Exhibit 1 and referred to herein as "the Settlement Agreement."

[2] Prior to filing the Joint Stipulation of Dismissal, counsel for the United States conferred with counsel for the Defendants, who verbally consented to the filing of the Joint Stipulation of Dismissal.  Counsel for the United States did not request defense counsel's signature, however, not understanding it to be required under the Rule or the dismissal provisions of the False Claims Act, *see* 31 U.S.C. § 3730(b)(1) (dismissal of actions by private parties);  31 U.S.C. § 3730(c)(2)(A) –(B)

UNITED STATES' POSITION STATEMENT
IN RESPONSE TO THE COURT'S
FEBRUARY 9, 2017 ORDER

2

1     The United States and Relators included a proposed order with the Joint
2  Stipulation of Dismissal (ECF No. 44-1) filed pursuant to Rule 41 and 31 U.S.C. §
3  3730(b) .  This was done primarily to provide the Court with draft wording for an
4  order that would effectuate the requirements of the Settlement Agreement regarding
5  how the Relators' claims would be dismissed.  Specifically, by operation of the
6  Settlement Agreement all of the Relators' claims are to be dismissed with prejudice
7  as to the Relators, all claims within the Covered Conduct of the Settlement
8  Agreement are to be dismissed with prejudice as to the United States, and all claims
9  not falling within the Covered Conduct are to be dismissed without prejudice as to
10  the United States.  *See* Exh. 1 (Settlement Agreement at para. 2 and 3(d) (providing
11  for a release to the Defendants from the United States for the Covered Conduct but
12  explicitly not releasing "[a]ny liability to the United States (or its agencies) for any
13  conduct other than the Covered Conduct. . . ") and para. 4 (the Relators' release to
14  the Defendants for, *inter alia*, "the claims set forth in the Civil Action *and* the
15  Covered Conduct. . . .") (emphasis added). [3]

16

17

18  (dismissals where the Government proceeds with the action).  If the Court
19  determines that Defendants must also sign, the United States would of course be
20  amenable to their counsel signing onto the Joint Stipulation of Dismissal that has
21  already been signed by counsel for the other parties.

22  [3] The proposed order further provided a mechanism for the Court, like the United
23  States, to provide its written consent to the dismissal of the relators' action for good
24  cause shown in order to effectuate the terms of the parties' settlement agreement.
25  *See* 31 U.S.C. 3730(b)(1).

UNITED STATES' POSITION STATEMENT                             3
IN RESPONSE TO THE COURT'S
FEBRUARY 9, 2017 ORDER

Case 2:13-cv-05013-EFS    Document 60 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

1    The proposed order was also provided so that this Court could explicitly retain
2    jurisdiction as to the enforcement of the Settlement Agreement and as to the
3    determination of the Relators' share should the United States and the Relators be
4    unable to reach agreement on that issue.  As to retaining jurisdiction as to
5    enforcement of the Settlement Agreement, it should be noted that the Settlement
6    Agreement has ongoing obligations.  For instance, the Settlement Agreement
7    requires the Defendants to not use government funds to pay or reimburse themselves
8    for the settlement amount and the United States has the ability to audit the
9    Defendants for compliance with that term.  *See* Exh. 1 (Settlement Agreement at
10   para. 8).  Accordingly, in the event of a dispute over any such ongoing obligation,
11   the proposed order provided for the Court to retain jurisdiction to enforce the terms
12   of the Settlement Agreement.

13       The United States and the Relators also requested that the Court retain
14   jurisdiction regarding the determination of the Relators' share of the proceeds due, if
15   any, pursuant to 31 U.S.C. § 3730(d).  This request for a limited retention of
16   jurisdiction by this Court is limited solely to the determination of Relators' share of
17   the settlement amount as defined in the Settlement Agreement.  At this time, the
18   United States and the Relators continue to work towards an agreement regarding the
19   Relators' share and therefore a retention of jurisdiction pursuant to 31 U.S.C.
20   § 3730(d) remains necessary.

21       The United States takes no position on Mr. Brunson's motion (ECF No. 46).
22   The United States does not have knowledge of or involvement in the fee dispute
23   referenced in the motion. ████████████████████████████████
24   ███████████████ REDACTED ███████████████
25   ████████████████████████████████████████

UNITED STATES' POSITION STATEMENT                              4
IN RESPONSE TO THE COURT'S
FEBRUARY 9, 2017 ORDER

**REDACTED**

Importantly, however, the Settlement Agreement referenced in the Joint Stipulation of Dismissal (ECF No. 44) is neither referenced nor affected by the issues raised in Mr. Brunson's motion or the Court's resolution of them. The Settlement Agreement executed by the Relators, the Defendants, and the United States expressly states that it is "the complete agreement between the Parties." Exh. 1 (Settlement Agreement, para. 14). It does not reference any other agreement among any of the parties as a contingency to the settlement. Therefore, the November 22, 2016 Settlement Agreement is wholly independent of any other agreement reached by the Relators and the Defendants.

At the hearing, the United States does not intend to call any witnesses. As a result, the United States believes that the hearing, as it pertains to the Joint Stipulation of Dismissal, would take between 10 and 30 minutes, unless the Court anticipates that more time would be needed to discuss the matter.

CHAD A. READLER
Acting Assistant Attorney General
MICHAEL C. ORMSBY
United States Attorney

*/s/ Don Williamson*
MICHAEL D. GRANSTON
SARA McLEAN
DON WILLIAMSON
KATE BUSHMAN SMITH
ALEXANDRA N. WILSON
U.S. Department of Justice Civil Division
P.O. Box 261; Ben Franklin Station
Washington, DC 20044

Case 2:13-cv-05013-EFS    Document 60 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

1

2                                       /s/ Tyler H.L. Tornabene
                                  TYLER H.L. TORNABENE
3
                                  Assistant United States Attorney
4                                 United States Attorney's Office for the
                                  Eastern District of Washington
5                                 920 W. Riverside Drive, Suite 340
6                                 Spokane, WA 99201

7
                                  Attorneys for Plaintiff United States
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES' POSITION STATEMENT                                    6
IN RESPONSE TO THE COURT'S
FEBRUARY 9, 2017 ORDER

Case 2:13-cv-05013-EFS    Document 60 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2017, I filed the *United States' Position in Response to the Court's February 9, 2017 Order* with the United States District Court for the Eastern District of Washington.  A copy of the aforementioned document will be served via the method indicated below to the following:

**Via Email**

| | |
|---|---|
| Richard C. Eymann<br>Eymann Allison Hunter & Jones P.S.<br>2208 West Second Avenue<br>Spokane WA 99201 | Michael D. McKay<br>Thomas Brennan<br>McKay Chadwell<br>600 University Street<br>Seattle WA 98101 |
| Hugh P. Lambert<br>Emily C. Jeffcott<br>Cayce C. Peterson<br>The Lambert Firm, PLC<br>701 Magazine Street<br>New Orleans LA 70130 | Allison L. Murphy<br>Marisa M. Bavand<br>Groff Murphy PLLC<br>300 East Pine Street<br>Seattle WA 98122 |
| Thad M. Guyer<br>Stephani Lynn Ayers<br>T M Guyer and Ayers & Friends PC<br>116 Mistletoe Street<br>P. O. Box 1061<br>Medford OR 97501 | |

/S/ Tyler H.L. Tornabene
Tyler H.L. Tornebene
Assistant United States Attorney

UNITED STATES' POSITION STATEMENT
IN RESPONSE TO THE COURT'S
FEBRUARY 9, 2017 ORDER

7

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Department of Energy (collectively the "United States"), Bechtel National, Inc. and Bechtel Corporation (collectively BNI) and URS Corporation (predecessor in interest to AECOM Global II, LLC) and URS Energy & Construction, Inc. (now known as AECOM Energy & Construction, Inc.) (collectively URS) (hereafter BNI and URS are collectively referred to as Defendants), and Gary Brunson, Donna Busche, and Walter Tamosaitis (collectively "Relators") (hereafter the United States, the Defendants, and the Relators are collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Bechtel National, Inc. is a Nevada Corporation, with its principal place of business in the State of Virginia, and doing business in the State of Washington.  Bechtel Corporation is incorporated in the State of Nevada.   During the time period of the Covered Conduct described below, URS Corporation was incorporated in Delaware, headquartered in California and did business in the State of Washington.  URS Energy & Construction, Inc. is an Ohio Corporation, headquartered in the State of Colorado, and doing business in the State of Washington.

B.      The Hanford Site, located in southeastern Washington State, was the largest of three defense production sites in the United States.  As a result of these activities, 56 million gallons of radioactive and chemical wastes are now stored in 177 underground tanks on the Hanford Site.  To address this challenge, the U.S. Department of Energy (DOE) contracted BNI to design and build the Hanford Waste Treatment and

1

Immobilization Plant (WTP), pursuant to Contract No. DE-AC27-01RV14136 (WTP Contract), which will use vitrification to immobilize most of Hanford's waste. URS is a major BNI subcontractor and performs a significant amount of the work. BNI and URS personnel work closely together on the WTP Contract.

      C.      On February 4, 2013, Relators filed a *qui tam* action in the United States District Court for the Eastern District of Washington captioned *United States ex rel. Brunson v. Bechtel National Inc., et al.,* Case No. CV-13-5013-EFS, pursuant to the *qui tam* provisions of the civil False Claims Act, 31 U.S.C. 3730(b), and filed an Amended Complaint on August 23, 2013 (the "Civil Action"). The Civil Action alleges that BNI and URS violated the civil False Claims Act, 31 U.S.C. 3729 *et seq.,* as a result of actions and omissions related to performance of the WTP Contract.

      D.      The United States partially intervened in the Civil Action on November 1, 2016.

      E.      The United States contends that it has certain claims against BNI and URS relating to their activities on the WTP Contract, because it alleges BNI and URS submitted, or caused to be submitted, false claims for payment to the United States as a result of the following conduct during the period from January 1, 2001, to June 30, 2013:

      1. The United States contends that BNI personnel and agents acting on its behalf engaged in actions to influence or attempt to influence federal officials in connection with the WTP Contract (the "lobbying activities"), that BNI charged the cost of such lobbying activities in connection with the WTP Contract to the WTP Contract directly and other federal government contracts indirectly, and that BNI failed to submit required declarations concerning such lobbying activities, in violation of the Federal Acquisition Regulation cost principles and the Byrd Amendment, 31 U.S.C. § 1352.

2. The United States contends that BNI, URS and BNI's subcontractors and sub-tier subcontractors failed to comply with the requirements of NQA-1 and other nuclear quality requirements of the WTP Contract in connection with the procurement, fabrication and installation of vessels and piping to be installed in the black cell and "hard-to-reach" areas of the WTP; and that they misrepresented their compliance with these requirements to DOE.

3. The United States contends that BNI, URS and BNI's subcontractors and sub-tier subcontractors failed to comply with the requirements of NQA-1 in connection with (i) the development of the QRA software, (ii) testing related to the HPAV technical issue, (iii) testing related to the M2 technical issue; and (iv) testing related to the M12 technical issue; and that they misrepresented their compliance with these NQA-1 requirements to DOE.

4. The United States contends that BNI, URS and BNI's subcontractors and sub-tier subcontractors failed to comply with the requirements of NQA-1 including those relating to commercial grade dedication of material and services procured under the WTP Contract, and that BNI failed to flow down appropriate NQA-1 requirements to subcontractors and sub-tier subcontractors and failed to oversee such subcontractors' and sub-tier subcontractors' compliance with NQA-1.

The conduct described in this Paragraph E is referred to below as the Covered Conduct.

F.    This Settlement Agreement is made in compromise of disputed claims and is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded. BNI and URS expressly deny the allegations of the United States and Relators as set forth herein and in the Civil Action.

G.    Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

H.    To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.    Defendants shall pay to the United States a total of One Hundred Twenty Five Million Dollars ($125,000,000.00) (the Settlement Amount) and interest on the Settlement Amount at a rate of 2% per annum from November 1, 2016, until payment in full, by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Eastern District of Washington.  The Settlement Amount shall be paid in the principal amounts and within the periods set forth below:

> Payment from BNI:  $67,500,000.00 (plus accrued interest thereon) (within
> thirty (30) days after the Effective Date of this Agreement)
> Payment from URS:  $57,500,000.00 (plus accrued interest thereon)
> (within forty-five (45) days after the Effective Date of this Agreement)

The separate payments set forth above for BNI and URS do not affect their respective joint and several liability for the Settlement Amount.

2.    Subject to the exceptions in Paragraph 3 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the Settlement Amount, the United States releases Defendants, together with each of their current and former direct and indirect parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions and affiliates; current or former corporate owners; and the corporate successors and assigns of any of them (the "Corporate Released Parties"), from any civil or administrative monetary

4

claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C.
§§ 3729-3733; the Byrd Amendment, 31 U.S.C. § 1352; the Civil Monetary Penalties Law,
42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the
Contract Disputes Act, 41 U.S.C. 7101-7109; or the common law theories of breach of
contract, payment by mistake, unjust enrichment, and fraud.

    3.     Notwithstanding the release given in paragraph 2 of this Agreement, or any
other term of this Agreement, the following claims of the United States are specifically
reserved and are not released:

    a.     Any liability arising under Title 26, U.S. Code (Internal Revenue
         Code);

    b.     Any criminal liability;

    c.     Except as explicitly stated in this Agreement, any administrative
         liability, including the suspension and debarment rights of any
         federal agency;

    d.     Any liability to the United States (or its agencies) for any conduct
         other than the Covered Conduct;

    e.     Any liability based upon obligations created by this Agreement;

    f.     Any liability of individuals;

    g.     Any liability for express or implied warranty claims or other claims
         for defective or deficient products or services, including quality of
         goods and services, except to the extent of the Covered Conduct set
         forth in paragraphs E.2 and E.3 above and released in paragraph 2,
         and except to the extent of the Covered Conduct set forth in

5

paragraph E.4 above and released in paragraph 2 in connection with procurements for NQA-1 material or equipment made on or before June 30, 2013;

h.    Any liability for failure to deliver goods or services due, except to the extent of the Covered Conduct set forth in paragraphs E.2 and E.3 above and released in paragraph 2, and except to the extent of the Covered Conduct set forth in paragraph E.4 and released in paragraph 2 above in connection with procurements for NQA-1 material or equipment made on or before June 30, 2013; and

i.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

4.    Conditioned upon BNI's and URS's full payment of the Settlement Amount, each of the Relators, for themselves and their heirs, successors, attorneys, agents, and assigns, releases the Corporate Released Parties, as well as any current or former owners, officers, directors, trustees, shareholders, employees, executives, agents, or affiliates of the Corporate Released Parties from (a) any civil monetary claim the Relators have or may have for the claims set forth in the Civil Action and the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, up until the date of this Agreement; and (b) all liability, claims, demands, actions, or causes of action whatsoever, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation or doctrine, that Relators, their heirs, successors, attorneys, agents, and assigns otherwise have brought or would have standing to bring as of the date of this Agreement, including any liability to Relators arising from

6

or relating to the claims Relators asserted or could have asserted in the Civil Action, up until the date of this Agreement. Relators each further represent that none of them know of any conduct by the Corporate Released Parties or any current or former owners, officers, directors, trustees, shareholders, employees, executives, agents, or affiliates of the Corporate Released Parties that would constitute a violation of the civil False Claims Act other than the claims set forth in the Civil Action and the Covered Conduct, and Relators each acknowledge and agree that their representations are a material inducement to BNI's and URS's willingness to enter into this Agreement.

5.        Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

6.        Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

7

Case 2:13-cv-05013-EFS    Document 60-1 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

7.      Defendants fully and finally release the Relators, their heirs, successors, attorneys, agents, and assigns from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relators related to the Covered Conduct and the Relators' investigation and prosecution thereof.

8.      a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and their present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Settlement Agreement;

(5)     the payment Defendants make to the United States pursuant to this Agreement,

are unallowable costs for government contracting purposes (hereinafter referred to as

8

Unallowable Costs).

    b.    Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

    c.    Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants or any of their subsidiaries or affiliates from the United States. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

    9.    Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1). Such dismissal will be subject to the terms of the Settlement Agreement and with prejudice to the entire action as to the Relators and with prejudice to the United States to the extent of the Covered Conduct and without Prejudice as to the remainder of the Civil Action. Pursuant to this dismissal, the Court will explicitly retain jurisdiction to determine relators' attorneys' fees and share of the proceeds pursuant

9

to 31 U.S.C. § 3730(d).

10.     This Agreement is intended to be for the benefit of the Parties and the releasees identified in paragraphs 2, 4, 6 and 7 only.

11.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as provided in 31 U.S.C. § 3730(d).

12.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

13.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Washington.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

14.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

15.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

16.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

17.     This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.  This Agreement is binding on the Relators, theirs heirs, successors, transferees, and assigns.

18.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

19.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

Case 2:13-cv-05013-EFS    Document 60-1 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

THE UNITED STATES OF AMERICA

DATED: 11-22-16                    By: _____
                                  TYLER H.L. TORNABENE
                                  Assistant U.S. Attorney
                                  United States Attorney's Office
                                  Eastern District of Washington


DATED: 11/22/16                   By: _____
                                  DON WILLIAMSON
                                  Senior Trial Counsel
                                  KATE BUSHMAN SMITH
                                  ALEXANDRA N. WILSON
                                  Trial Attorneys
                                  Commercial Litigation Branch, Civil Division
                                  United States Department of Justice

12

URS **DEFENDANTS**

DATED: 11/22/2016

By: _____
David Gan
President
AECOM GLOBAL II, LLC (successor in interest to
URS Corporation, a Delaware Corporation)

DATED: 11/22/2016

By: _____
Keenan Driscoll
Treasurer
AECOM ENERGY & CONSTRUCTION, INC.
(formerly known as URS Energy & Construction,
Inc.)

DATED: 11/22/16

By: _____
JAMIE GORELICK
JONATHAN G. CEDARBAUM
JEANNE RHEE
WilmerHale

Counsel for AECOM Global II, LLC and AECOM
Energy & Construction, Inc.

13

## BECHTEL DEFENDANTS

DATED: 11/22/2016            By: _Bkusinko_
                            Name Barbara Rusinko
                            Title President
                            BECHTEL NATIONAL, INC.


DATED: _____             By: _____
                            Name
                            Title
                            BECHTEL CORPORATION


DATED: _____             By: _____
                            PETER B. HUTT II
                            Covington & Burling LLP

                            Counsel for Bechtel National, Inc. and Bechtel
                            Corporation

14

Case 2:13-cv-05013-EFS    Document 60-1 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

## BECHTEL DEFENDANTS

DATED: _____         By: _____
                        Name
                        Title
                        BECHTEL NATIONAL, INC.

DATED: 11/22/16         By: _____
                        Name MICHAEL BAILEY
                        Title SENIOR VICE PRESIDENT
                        BECHTEL CORPORATION

DATED: 11/22/16         By: _____
                        PETER B. HUTT II
                        Covington & Burling LLP

                        Counsel for Bechtel National, Inc. and Bechtel
                        Corporation

14

<u>RELATOR DONNA BUSCHE</u>

DATED: 11/22/16                    By: _____
                                  DONNA BUSCHE


DATED: _____                   By: _____
                                  HUGH P. LAMBERT
                                  EMILY C. JEFFCOTT
                                  The Lambert Firm, PLC

                                  Counsel for Donna Busche

15

Case 2:13-cv-05013-EFS    Document 60-1 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

## RELATOR DONNA BUSCHE

DATED: _____        By: _____
                       DONNA BUSCHE


DATED: _11·22·1/_      By: _____
                       HUGH P. LAMBERT
                       EMILY C. JEFFCOTT
                       The Lambert Firm, PLC


                       Counsel for Donna Busche

Case 2:13-cv-05013-EFS    Document 60-1 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

### RELATOR WALTER TAMOSAITIS

DATED: _____        By: _____
                        WALTER TAMOSAITIS


DATED: _____        By: _____
                        HUGH P. LAMBERT
                        EMILY C. JEFFCOTT
                        The Lambert Firm, PLC

                        Counsel for Walter Tamosaitis

16

## RELATOR WALTER TAMOSAITIS

DATED: _____        By: _____
                      WALTER TAMOSAITIS

DATED: 1/·24·16       By: _____
                      HUGH P. LAMBERT
                      EMILY C. JEFFCOTT
                      The Lambert Firm, PLC

                      Counsel for Walter Tamosaitis

16

Case 2:13-cv-05013-EFS    Document 60-1 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

## RELATOR GARY BRUNSON

DATED: *Nov 22, 2016*

By: _____
GARY BRUNSON


DATED: _____

By: _____
HUGH P. LAMBERT
EMILY C. JEFFCOTT
The Lambert Firm, PLC

Counsel for Gary Brunson

17

Case 2:13-cv-05013-EFS    Document 60-1 ***NOT ON PUBLIC DOCKET***    Filed 02/28/17

## RELATOR GARY BRUNSON

DATED: _____    By: _____
                    GARY BRUNSON

DATED: //·22·//    By: _____
                    HUGH P. LAMBERT
                    EMILY C. JEFFCOTT
                    The Lambert Firm, PLC

                    Counsel for Gary Brunson

17