UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. GARY BRUNSON, DONNA BUSCHE, and WALTER TAMOSAITIS, | No.  2:13-CV-5013-EFS |
| Plaintiffs, | **ORDER DETERMINING REASONABLE ATTORNEY FEES** |
| v. | |
| BECHTEL NATIONAL INC.; BECHTEL CORPORATION; URS CORPORATION; and URS ENERGY & CONSTRUCTION, INC., | |
| Defendants. | |

Before the Court, without oral argument, is Relator Gary Brunson's Motion to Determine Reasonable Attorney's Fees, ECF No. 79. Counsel for Relator Brunson characterizes the question before the Court as "whether $4,056,744.00 is a reasonable attorney's fees [sic] for Relator Brunson to pay on the $5,555,000.00 recovery the court has ordered is payable to him." ECF No. 79 at 3. That is a mischaracterization.

Relators received an award of $25 million based on the Settlement in this case. Under a separate agreement negotiated by Relators and Defendants, Relators also received an additional $4 million in statutory attorney fees and costs. The three Relators in this case have each received $5,555,555.55, for a total of

ORDER – 1

$16,666,666.67, or 58 percent of the total award. Counsel for Relators claim entitlement to $12,178,566.87 based on the contingent fee agreement executed by all Relators and the statutory award of attorney fees. The question is thus whether a $12,178,566.87 fee award — 42 percent of the total award — is reasonable given the $16,666,666.67 paid to Relators.

Mr. Brunson argues that the combination of a statutory fee award and contingent fee award is an excessive and unjustified award in this case and, presumably, that any portion of the fee award deemed excessive should be distributed to Relators. ECF Nos. 79 & 105. Relators, representing the interests of counsel for Relators, respond that the fees are reasonable. ECF No. 91. Having reviewed the pleadings and the file in this matter, the Court is fully informed and finds that a total fee award in the amount of $12,074,016.66 is appropriate.

## I.   BACKGROUND

This fee dispute stems from a qui tam action under the False Claims Act. The qui tam Relators were represented by The Lambert Firm, based in New Orleans, Louisiana. The merits of the qui tam action were resolved through settlement in November 2016 after more than four years of investigation by Relators and the U.S. Government. There was extensive negotiation between the parties. As part of the Settlement Agreement, Defendants paid $125 million to the Government, of which Relators received $25 million. The Defendants and Relators then negotiated an additional $4 million payment to satisfy Defendants' statutory obligation to pay attorney fees and costs of Relators.

1    The Court notes that this case is somewhat unique. Mr. Brunson,

2    a Relator in this case and a former client of The Lambert Firm, is

3    contesting the total amount of fees awarded to The Lambert Firm. While

4    that in itself is not unusual, as part of his argument, Mr. Brunson

5    disputes the hourly rate and number of hours billed by The Lambert

6    Firm under the lodestar approach, which is typically a position taken

7    by the losing party in a fee-shifting scenario in order to decrease

8    the amount of fees it is required to pay. In this case, Mr. Brunson

9    presumably does not want to decrease the fees paid by Defendants to

10   Relators, but instead wants to decrease the fees he owes to The

11   Lambert Firm in order to increase his own award.

12   The other two Relators, Donna Busche and Walter Tamosaitis, have

13   not joined in this fee contest. The Court finds, however, that any

14   reduction to the fees awarded to The Lambert Firm should be

15   distributed to all three Relators equally based on the agreement

16   between Relators to divide any payment related to the case equally.

17   *See* ECF Nos. 75-1 at 12–14. While Mr. Brunson's allotment would be

18   subject to any fee agreement he may have with his attorney, the

19   portions of any award distributed to Ms. Busche and Mr. Tamosaitis

20   would not be subject to any such agreement, unless Ms. Busche and Mr.

21   Tamosaitis have entered into independent agreements with counsel of

22   which the Court is unaware.

23   **II.   APPROACH TO DETERMINE REASONABLENESS OF FEES**

24   The parties suggest two contradictory approaches to determining

25   the reasonableness of attorney fees. Mr. Brunson argues that

26   reasonableness should be assessed based solely on the lodestar method,

1  while Relators argue that reasonableness of the total fee award is

2  independent of the lodestar calculation and should be assessed based

3  on the demands of the case and by comparing the fee amount to the

4  total award. The Court finds that a combination of these tests is the

5  proper approach.

6      The lodestar approach generally applies only to fee-shifting

7  scenarios, not to disputes regarding the total amount of fees paid by

8  a client to his attorney. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801

9  (2002) ("[T]he 'lodestar' figure has, as its name suggests, become the

10 guiding light of our fee-shifting jurisprudence." (quoting *City of*

11 *Burlington v. Dague,* 505 U.S. 557, 562 (1992))). The Supreme Court has

12 emphasized that "the lodestar method was designed to govern imposition

13 of fees on the losing party," and, therefore, "[i]n such cases,

14 nothing prevents the attorney for the prevailing party from gaining

15 additional fees, pursuant to contract, from his own client." *Id.* at

16 806; *see also Venegas v. Mitchell,* 495 U.S. 82, 89–90 (1990) (holding

17 that a fee-shifting statute does not prevent plaintiffs from being

18 required to pay additional fees under a contract with their attorney,

19 "even though their contractual liability is greater than the statutory

20 award that they may collect from losing opponents").

21     Accordingly, the lodestar method for calculating reasonable fees

22 applies to fees awarded under the fee-shifting provision of the False

23 Claims Act, 31 U.S.C. § 3730(d)(2), but does not apply to additional

24 fees awarded under a separate fee agreement between an attorney and

25 his client. *Cf. Neal v. Honeywell,* 191 F.3d 827, 833–34 (7th Cir.

26 1999) (holding in a False Claims Act case that the district court

properly computed fees using the lodestar method, without regard to contingency arrangement); *U.S., ex rel. Abbott-Burdick v. Univ. Medic. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885 at *10 (D.S.C. May 23, 2002) (finding that the contingent fee arrangement between the relators and their attorneys had no bearing on the analysis of statutory fees); *United States v. Gen. Elec.,* 808 F. Supp. 584, 585-86 (S.D. Ohio 1992) (finding that fee award under the False Claims Act is mandatory, so no consideration of contingent fees was permitted). The Court therefore finds that the lodestar approach is useful here to determine the reasonable amount of attorney fees incurred by The Lambert Firm, apart from the Firm's entitlement to a contingent fee.

After conducting a lodestar reasonableness test as to the statutory fees agreed to by Defendants, the Court will also determine whether the total fee award is reasonable under a more general reasonableness standard. *See Gisbrecht*, 535 U.S. at 808. This general reasonableness test, applied to fee agreements between a client and his attorney, looks to factors such as the total percentage of the award attributed to attorney fees and whether the award is just and equitable given the nature of the case and the work performed by the attorney. *See Venegas v. Skaggs*, 867 F.2d 527, 533 (9th Cir. 1989).

### III. <u>REASONABLENESS OF STATUTORY ATTORNEY FEES</u>

Defendants in this case entered into a private agreement with Relators to pay Relators $3,845,233.54 in attorney fees and $154,766.46 in costs in satisfaction of Defendants' obligations under the False Claims Act fee-shifting provision, 31 U.S.C. § 3730(d)(2). Counsel for Relators initially requested $4,114,771.33 in statutory

fees. ECF No. 96-1 at 1-2. The $269,537.79 reduction was presumably based on an arm's length negotiation between counsel for Relators and Defendants regarding reasonable fees in this case. In sealed documents related to the agreement surrounding this statutory fee payment, Mr. Brunson engaged in considerable negotiation of other issues, *see* ECF Nos. 58 at 3-5, 58-3, 59 at 3-4, 65-2 at 4, 65-3 at 3-5, 72-1 at 2-3, but there is no record that Mr. Brunson raised any objection to the statutory fee amount or in any way suggested that the fee amount requested was not supported.

The lodestar test for fees under a fee-shifting statute is designed to ensure the reasonableness of fees being charged to the losing party. As the client, rather than the losing party, it is unclear what, if any, standing Mr. Brunson has to now challenge the amount of the statutory fee award as being too high, as the award was paid for his benefit. In addition, to the extent that Mr. Brunson argues that the statutory fee paid by Defendants was too high, at no time does he suggest that such fees be returned to Defendants, but instead seems to suggest that he should receive a greater share of such fees. Defendants have not asserted an interest in any fees deemed to be excessive.

Regardless of the unique posture of this case, as the issue of reasonableness of fees — including the reasonableness of the statutory award — is now before the Court, the Court will begin by applying the lodestar test to the statutory attorney fees awarded to Relators under

31 U.S.C. § 3730(d)(2).[1] Although Relators and Defendants agreed to a payment of statutory attorney fees less than the sum initially requested by Relators, the Court begins with the initial request — as reflected in The Lambert Firm's billing records — in order to perform a comprehensive analysis of the reasonableness of the fees requested by, and paid to, The Lambert Firm.

**A.    Standard**

The lodestar approach is based on the principle that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The Court then determines whether the resulting lodestar fee amount is reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 & n.11 (9th Cir. 2013).

/

---

[1] The amount of costs does not appear to be disputed. Mr. Brunson does not include any argument as to costs, although he does suggest that the Court reconsider its finding in ECF No. 95 that "Relators are entitled to the costs and expenses portion of the payment, $154,766.46." ECF No. 105 at 8 n.6. The Court made this finding based on the language in Relator's proposed order, ECF No. 63, which proposed an order that "Relators' counsel are entitled to THIRTY THREE AND ONE THIRD PERCENT of the gross amount recovered a defined above **plus** the stipulated statutory attorney's fees of $3,845,233.54." The Court understood this language to mean that the amount of costs was not in dispute. Relators are entitled to receipt of fees and costs paid under the fee-shifting statute unless this right has been delegated to their attorneys. As the issue of costs was not before the Court, the Court noted that Relators were entitled to the costs and expenses portion of the statutory payment. Of course, as The Lambert Firm paid costs upfront on behalf of Relators, The Lambert Firm is entitled to be reimbursed for such costs based on the terms of the fee agreement between the parties. The Relators, including Mr. Brunson, do not dispute this. The Court finds no reason to alter its prior order.

### 1.  __Reasonable Rate__

"The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation marks omitted). In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *See Cabrales v. Cty. of L.A.*, 864 F.2d 1454, 1464 (9th Cir. 1988), *vacated*, 490 U.S. 1087, *reinstated,* 886 F.2d 235 (1989).

The Supreme Court has also indicated that, when there is a delay in payment, an appropriate adjustment to compensate for the delay is "the application of current rather than historical hourly rates." *Missouri v. Jenkins*, 491 U.S. 274 (1989); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor.").

Generally, a district court has discretion to award rates higher than the local rate only if a fee applicant proves local counsel was unavailable, "because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 907 (9th Cir. 1995). In qui tam cases,

there has been some discussion nationally as to whether the appropriate attorney fee rate should be assessed on a local level or a national level, given the specialized nature of qui tam practice. *See, e.g.*, *United States ex rel. Doe v. Biotronik, Inc.*, No. 2:09-cv-3617-KJM-EFB, 2015 WL 6447489 at *12 (E.D. Cal. Oct. 23, 2015); *United States ex rel. Liotine v. CDW-Gov't, Inc.*, No. 3:05-cv-00033, 2013 WL 11267176 at *5 (S.D. Ill. May 17, 2013).

The Court finds that, despite the unique nature of qui tam cases, application of the standard approach of applying local fee rates is appropriate in this case. There is no evidence on the record that Relators were unable to find competent counsel within the district or that the retainer of counsel in Louisiana was otherwise necessary. The Court finds that the specialization required of qui tam counsel and the unique character of those actions is adequately reflected in the *Camacho* and *Cabrales* factors for reasonable fees and the *Kerr* reasonableness factors, applied below, and need not also be reflected by applying a national fee rate. Accordingly, the Court will determine the reasonable rate for work performed by The Lambert Firm based on rates within the Eastern District of Washington.

First, the Court looks to prevailing attorney fee rates in the Eastern District of Washington. Mr. Brunson points to a chart detailing the fees awarded in the district from 2010 to 2015 ("Hartliep Fee Chart"). *See* ECF No. 105 Ex. 3. The Hartliep Fee Chart is informative as to the range of local rates, although the chart was last updated on April 10, 2015, making the information somewhat outdated as to current prevailing rates. In addition, none of the

cases in the Hartliep Fee Chart are False Claims Act cases. Thus, while certainly informative, the Hartliep Fee Chart does not speak to the precise issues in this case. *See Doe v. Biotronik*, 2015 WL 6447489 at *12 (noting that a declaration regarding prevailing fee rates was only somewhat informative in a False Claims Act fee dispute because the declaration "[did] not specifically account for differences between qui tam and other litigation").

According to the Hartliep Fee Chart, the maximum rate awarded in the Eastern District of Washington between 2010 and 2015 was $450 per hour for work performed in 2013, which was awarded in 2015. This fee was awarded in a disability discrimination case to an attorney with 34 years of experience. The highest rate awarded for an attorney with ten years or less of experience was a fee of $315 per hour awarded in 2014 to an attorney with ten years of experience in civil litigation. The highest fee awarded to a new attorney was $250 per hour awarded in 2015 to an attorney with one year of experience. The lowest fee of $140 per hour was awarded in 2015 in a disability discrimination case, to an associate with three years of experience. The Hartliep Fee Chart also includes paralegal rates, which range from $75 per hour to $165 per hour. The only clerical rate included is an award of $30 per hour in 2010.

Although the Court will assess a reasonable fee based on local standards, given the fact that no information has been provided regarding attorney fee awards in False Claims Act cases within this district, the Court finds it informative to review attorney fee awards, and the bases for such awards, in False Claims Act qui tam

cases from other districts within the Ninth Circuit. The Court begins with a case from the Western District of Washington, as rates in the Western District are relevant to rates within the Eastern District, as the Western District represents the closest large legal market for parties in the Eastern District. In *U.S. ex rel. Marchese v. Cell Therapeutics, Inc.*, a 2008 case, the court used the rates of the Seattle-based firm McKay Chadwell — counsel for Defendants in this case — of $375 per hour for partners, $250 per hour for associates, and $120 per hour for paralegals and other personnel, as the reasonable local rate. No. C06-168 MJP, 2008 WL 4950938 at *1 (W.D. Wash. Nov. 18, 2008).

Outside of Washington, the District Court for the Eastern District of California found that $400 was a reasonable rate for an attorney practicing in Sacramento with four years of experience, prior experience representing qui tam plaintiffs, and personal experience as a relator. *Doe v. Biotronik*, 2015 WL 6447489 at *12. The court explained that the rate was "at the top of or higher than the range approved in this district for very experienced civil rights litigators," but was justified given the attorney's experience, "the risk associated with representation of relators in FCA litigation, and the specialized subject matter of this case." *Id.* In 2015, the District Court for the Central District of California awarded rates of $450 and $345 per hour for attorneys with approximately six and four years of experience practicing law, respectively. *United States v. Baran*, No. 14-CV-02639-RGK, 2015 WL 6745151 at *1 (C.D. Cal. Oct. 28, 2015). The District Court for the Northern District of California

found that attorney rates of $625 and $285 were appropriate and explained that "false claims suits are complex," counsel "handled this years-long and highly-contested case with skill," and counsel obtained an "excellent outcome" through a settlement award of $8 million. *United States v. Northeast Med. Servs., Inc.*, No. C 10-1904 CW, 2016 WL 629019 at *2 (N.D. Cal. Feb. 17, 2016). By contrast, the District Court for the District of Arizona found that a rate of $250 per hour was appropriate in a 2005 case in Tucson, due to the attorney's "lack of experience in qui tam actions, his role as support counsel in litigating and settling the matter and his failure to indicate any work completed by lesser-skilled personnel at a lesser hourly rate." *U.S. ex rel. McCartan v. Cochise Health All. Med. Grp., P.C.*, No. CV01652TUCRCCCRP, 2005 WL 2416353 at *1 (D. Ariz. Sept. 27, 2005).

Relying on the information outlined above — as well as the Court's familiarity with the range of rates customarily charged within the Eastern District of Washington — the Court finds that most of the rates charged by The Lambert Firm for attorney and paralegal work are both within the range of local rates and reasonable given the nature and complexity of this case, but reduces some rates as explained below.

The highest fees charged were by named partners Hugh Lambert and Mikal C. Watts, with billing rates of $500 per hour. Mr. Brunson argues that Mr. Lambert's rate is too high given his inexperience with qui tam actions, and suggests that the rate be reduced to $400 per hour. ECF No. 105, 105-4. While Mr. Lambert does not appear to have had significant qui tam experience prior to this case, the Court finds

that he and his firm were likely chosen to represent Relators based on special skills possessed by Mr. Lambert. Mr. Lambert has a Bachelor of Science degree in engineering and worked as a production process engineer for the Hydromatic Division of General Motors Corporation for seven years before attending law school. Mr. Lambert was admitted to practice law in 1973, and he has focused his practice on complex maritime lawsuits, including high profile lawsuits. His scientific background and experience with complex lawsuits made him uniquely qualified to act as counsel in this case. While the Hartliep Fee Chart indicates that the highest fee charged was $450, this was for work performed in 2013. Accounting for increases in the prevailing fee rates over time, an award of $500 per hour does not clearly exceed the rates charged in the Eastern District of Washington. In addition, given the complexity of this case and the nature of the claims, a rate near the top of the civil-practice spectrum is appropriate for a named partner with over 40 years of experience.

Mr. Brunson also argues that Mr. Watts's rate should be reduced from $500 to $425, although he notes that Mr. Watts has vast non-False Claims Act experience. ECF No. 105-1, 105-4. Emily Jeffcott's declaration indicates that Watts Guerra LLP had been involved in multiple False Claim Act cases prior to this case. *See* ECF No. 116 Ex. 2. Given Mr. Watts's qui tam experience prior to this case, his status as a named partner with 27 years of experience, and the complex nature of this case, a rate of $500 per hour is appropriate.

Mr. Brunson also argues that partner and lead attorney Emily Jeffcott's rate should be reduced from $350 to $250. Emily Jeffcott

1  has approximately seven years of experience as an attorney, but her
2  declaration indicates that she had substantial experience with qui tam
3  actions under the False Claims Act prior to participating in this
4  case. ECF No. 116 Ex. 2. Ms. Jeffcott represents that she joined The
5  Lambert Firm in May 2013, following the initiation of this case in
6  2012, in order to manage the firm's False Claims Act practice. She has
7  been recognized as a "Louisiana Super Lawyers Rising Star," "National
8  Lawyers Top 40 Under 40," "Top New Orleans Lawyer," and "Texas Super
9  Lawyers Rising Star," among other things. She has also published an
10 article relating to the False Claims Act. Based on her reputation,
11 prior qui tam experience, and partner status, $350 per hour is a
12 reasonable rate. This rate is well within the predominating rates in
13 this district for an attorney with Ms. Jeffcott's qualifications
14 working on a complex civil case.

15      Similarly, while less information is provided as to partners
16 David McLendon and Cayce Peterson — who were not as heavily involved
17 in this case — the Court finds that their rates of $350 per hour are
18 within the rates charged for work performed by partners on complex
19 civil cases within this district. Mr. McLendon has 12 years of
20 experience and Ms. Peterson has nine years of experience. According to
21 the Hartliep Fee Chart, in 2014, awards of $340 per hour were approved
22 in this district for two partners with 13 years of experience who had
23 experience in complex civil litigation matters and commercial
24 litigation matters and who had clerked for federal district judges. In
25 the same case, an attorney with ten years of experience in civil
26 litigation practice was awarded a fee rate of $315 per hour. Based on

1  these comparable 2014 attorney fee awards, the Court finds that a rate

2  of $350 per hour in this complex civil case is justified.

3      Mr. Brunson objects to rates charged for senior associate

4  Chatham Mangat, $275, and associate Kimberly Jemison, $225, because

5  the firm billed work performed by them at their current attorney rates

6  when the work was performed before they were licensed attorneys. This

7  critique would also apply to Morgan Embleton and Anna Klemmer. As

8  discussed above, it is appropriate to use current billing rates to

9  compensate The Lambert Firm for the delay in payment over the five

10 years of this case. The Court finds, however, that this principle does

11 not apply in the same way when an individual changes status during the

12 pendency of the case. The Court finds that it would be inappropriate

13 to compensate the Firm at attorney rates for work performed by non-

14 attorneys.

15     Accordingly, the Court will approve a rate of $175 per hour for

16 the 305.4 hours billed by Ms. Embleton and 470.5 hours billed by Ms.

17 Mangat prior to their admission to the bar in 2014. This rate is

18 higher than the Juris Doctor rate billed by Gerry E. Beckett for his

19 brief involvement in this case because the institutional knowledge

20 gained by Ms. Embleton and Ms. Mangat during their substantial time

21 working on this case justifies a higher fee. The Court will also

22 approve a rate of $175 per hour for the 569.8 hours of work performed

23 by Ms. Klemmer prior to her admission to the bar in 2015. Because in

24 contesting Ms. Klemmer's rate, Mr. Brunson indicated only that Ms.

25 Klemmer was admitted in 2015, the Court will proceed as if Ms. Klemmer

26 were admitted to the bar on January 1, 2015.

As to Ms. Jemison, she billed approximately 2,066.2 hours before earning her Juris Doctor. This time will be billed at the law clerk rate of $100 per hour, discussed below. The time between Ms. Jemison's completion of law school and her admission to the bar will then be billed at a rate of $200 per hour. This rate is higher than the other Juris Doctor rates because of Ms. Jemison's two years of experience working on this case prior to earning her Juris Doctor. This prior experience greatly increased the value of Ms. Jemison's work on this case.

As to the rates of Ms. Embleton, Ms. Mangat, Ms. Klemmer, and Ms. Jemison following admission to the bar, the Court finds that the work performed by these associates involved highly technical material. Only Ms. Embleton and Ms. Jemison submitted declarations regarding their qualifications, presumably because Ms. Mangat and Ms. Klemmer are no longer affiliated with The Lambert Firm. Ms. Embleton and Ms. Jemison were on the Journal of Technology and Intellectual Property at Tulane Law School. Ms. Embleton also worked as a student attorney in the Tulane Environmental Law Clinic, and graduated with an Environmental Law Certificate. Ms. Jemison graduated cum laude. Both were hired by The Lambert Firm in 2014 for the primary purpose of working on this case. The Court finds that rates of $275 per hour for Ms. Embleton and $225 per hour for Ms. Jemison are reasonable for an attorney with two years of experience and a recently admitted attorney, respectively. Both women had environmental and technology law credentials that made them capable of working on this complex case, and they also had experience working on this case prior to

becoming attorneys. As noted above, a rate of $250 per hour for a first-year attorney was approved in this district in 2015 based on that attorney's performance in a copyright infringement case. This case required the same type of technical knowledge as a copyright case. An increase of $25 per hour for Ms. Embleton is reasonable based on the fact that rates have increased since 2015 and Ms. Embleton has one additional year of experience. A decrease of $25 per hour for Ms. Jemison given her limited experience as an attorney is similarly reasonable.

While Ms. Mangat and Ms. Klemmer did not submit declarations outlining their qualifications, the Court finds that their respective rates, while at the high end of the civil fee spectrum given their respective experience levels, are justified based on the nature of the work, Ms. Mangat's three years of experience, and Ms. Klemmer's one year of experience. As discussed above, these rates also fall within the range of rates approved in this district.

Finally, Mr. Brunson also objects to rates billed for non-attorneys. He argues that (1) the paralegal rate should be reduced from $100 to $40 for Georgia Boxer; (2) the paralegal rate should be reduced from $100 to $95 for Diane Latta; (3) the legal assistant rate for transcriptions should be reduced from $75 to $40; and (4) the law clerk rate should be reduced from $100 to $95.

As noted above, the Hartliep Fee Chart indicates that paralegal rates in this district from 2010 to 2015 ranged from $90 to $165 per hour. Given the complex nature of this case, a rate of $100, which happens to be at the low-end of this range, is certainly reasonable

1  for both paralegals. This Court recently approved a law clerk rate of

2  $90 for work on a Social Security case in this district. Given the

3  specialized nature of the work in this case, a law clerk rate of $100

4  is reasonable.

5      Regarding the clerical rate for transcriptions, the Court finds

6  that a slight reduction is appropriate. As the Hartlieb Fee Chart

7  demonstrates, in 2010, this Court awarded $30 per hour for clerical

8  work. Given the passage of over six years, this rate should certainly

9  be increased, but a rate of $75 per hour represents an increase of 150

10 percent. The Court finds that a rate of $60 per hour would be

11 sufficient to compensate The Lambert Firm for transcription work.

12      2.   Fee for Document Review

13     Mr. Brunson also notes that 22.8 percent of all entries are for

14 "document review," and indicates that such tasks should be billed at a

15 rate lower than the standard attorney rate. ECF No. 105 at 4. Relators

16 respond that, although the billing entries are labeled as document

17 review, given the highly technical nature of the documents and the

18 importance of the documents to the case, such review should not be

19 billed at a lower rate. ECF No. 116 at 7. Relators also note that

20 Defendants, who were familiar with the documents involved, did not

21 object to the rates billed for document review tasks.

22     In some cases, it may be appropriate to reduce rates charged for

23 less-skilled tasks. *See Jenkins*, 491 U.S. at 288 n.10. The Court

24 finds, however, that no reduction is appropriate in this case. The

25 Lambert Firm generally delegated document review tasks to associates,

26 law clerks, and paralegals, as is appropriate, and the firm utilized a

document review program, "Relativity," to make the review more efficient. Some document review tasks were performed by partners — primarily lead attorney Emily Jeffcott and occasionally named partner Hugh Lambert — but such reviews by senior attorneys is often necessary, such as when the review requires particular knowledge or skill or is performed with some urgency, or when the senior attorney is preparing for a hearing or presentation. The Court finds that staffing decisions regarding document review generally appear to have been reasonable and therefore declines to second-guess The Lambert Firm's staffing strategy. *See Cabela's Wholesale Inc. v. Hawks Prairie Inv. LLC*, No. C11-5973 RBL, 2014 WL 1660624, at *3 (W.D. Wash. Apr. 25, 2014); *cf. Chaid v. Glickman*, No. C98-1004 WHO JCS, 1999 WL 33292940, at *16 (N.D. Cal. Nov. 17, 1999) ("[T]he Court finds that in this particular case, the requirement suggested by Defendant, that Plaintiff's counsel use less experienced lawyers for document review, drafting of pleadings and legal research, is contrary to the public interest embodied in the fee-shifting provisions of Title VII.").

In addition, the millions of pages of documents that were reviewed in this case were largely technical in nature, and it is reasonable to charge a higher rate for document review involving complicated issues. *See, e.g., Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 898–99 (C.D. Cal. 2016) (approving a document review rate of $260.75 per hour based on the complexity of document review); *In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917, 2016 WL 721680, at *43 (N.D. Cal. Jan. 28, 2016) (finding in a complex class action that class counsel's "rate for document review at $350 per hour" was

"reasonable and responsible"). Given the highly technical nature of the documents, the Court also has no reason to believe that a different division of labor for document review tasks would have resulted in a more efficient or less expensive handling of the case. *See Chaid*, 1999 WL 33292940, at *17 n.12; *cf. Abbott-Burdick*, 2002 WL 34236885 at *17 ("Common sense would dictate that senior attorneys can perform research more efficiently than less experienced individuals.").

Finally, it is impossible to say whether Relators would have obtained the same result in this case if lower billers, such as paralegals or a contracted document reviewing company, had performed the document review. *Cabela's Wholesale Inc.*, 2014 WL 1660624 at *3 (finding that it would be inappropriate to reduce fees for drafting and document review performed by an attorney charging a higher rate).

The Court does find, however, that a handful of tasks were performed by individuals who could have, and should have, delegated such tasks to lower-billing employees at the law firm. On August 26, 2013, Ms. Jeffcot billed one hour for the task of confirming filing and submitting a file-stamped version of the amended complaint. The Court finds that this was a clerical task that should be billed at a lower rate than Ms. Jeffcott's standard attorney rate. The Court finds that a rate of $60 per hour, as determined above to be an appropriate rate for transcriptions, is appropriate. A block-billed entry for April 28, 2016, indicates that Ms. Jeffcott booked flights for herself and Mr. Lambert and met with Ms. Embleton and Ms. Mangat, and an entry for April 29, 2016, indicates that Ms. Jeffcott rebooked a flight for

Mr. Lambert. Booking flights is also a clerical task that should be billed at a rate of $60 per hour. Because it is impossible to identify the portion of time spent booking the flight in the April 28, 2016 block entry, the Court finds that billing of the entire .6 hour entry at $60 per hour is appropriate. In addition, in two entries on July 7, 2014, Ms. Mangat billed transcription and categorization tasks at her attorney rate of $275 per hour. The Court finds that these entries should also be billed at the clerical rate of $60 per hour.

The Court also notes two tasks that do not appear to be appropriately billed to this case. *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) ("Hours that would not generally be billed to one's own client are not properly billed to an adversary." (quoting *Pub. Interest Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). On September 8, 2014, John Mason billed 1.5 hours for "Major Computer Problems." The Court will subtract this entry of $257.25. In addition, on September 26, 2014, Ms. Klemmer block-billed 4.5 hours for the task "fix Women in the Profession logo" and a document searching task. The Court is not aware of any connection between "Women in the Profession" and this case. Because it is impossible to know what portion of the entry was spent on the unrelated task, the Court will subtract the entire amount billed of $1,012.50.

3.  Fee for Travel Time

The Court also reviews the issue of attorney fee rates charged during travel. While Mr. Brunson does not raise this issue, the Court finds that the extensive travel time in this case merits mention.

ORDER - 21

Under Ninth Circuit precedent, a district court is free to award travel expenses based on the court's power to award reasonable attorney fees under a fee-shifting statute. *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580-81 (9th Cir. 2010) (citing *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991)). Determining the reasonable rate to award for travel time, however, is a more complicated question. *See In re Thomas*, 474 F. App'x 500, 502 (9th Cir. 2012) (noting that the question of whether to reimburse travel time at an attorney's full hourly rate is "not an easy question, as there will be some occasions when travel time can reasonably be reimbursed fully, and other times when it reasonably should be discounted"). The decision to reduce attorney fees for travel time is within the discretion of the district court. *Lemus v. Burnham Painting & Drywall Corp.*, 426 F. App'x 543, 546 (9th Cir. 2011) (holding that "[t]he decision to reduce fees for attorney travel time also fell within the district court's discretion" when Nevada plaintiffs retained a California law firm and provided no explanation as to why out-of-state counsel was necessary).

The Third Circuit Court of Appeals has held that "under normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel," unless the party can demonstrate that competent local counsel was not available. *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311 (3d Cir. 2008). Accordingly, in a False Claims Act qui tam action in the Eastern District of Pennsylvania, a court prohibited reimbursement for travel time

expended by out-of-state counsel in travelling to and from the forum. *See U.S. ex rel. Palmer v. C & D Tech., Inc.*, No. 12-907, __ F. Supp. __, 2017 WL 1477123 at *8 (E.D. Pa. Apr. 25, 2017). For out-of-forum events, however, the court noted that it was "mindful that but for a professional obligation the lawyer likely would not be traveling at all" and that a 50 percent rate of compensation was therefore justified. *Id.* at *9. In *U.S. ex rel. Poulton v. Anesthesia Associates of Burlington, Inc.*, the District Court for the District of Vermont made a different distinction, finding that "productive" travel time would justify a full hourly rate, while "non-productive" time should be reduced by 50 percent. 87 F. Supp. 2d 351, 357 (D. Vt. 2000). Finally, the Seventh Circuit has allowed travel time to be billed at an attorney's full hourly rate, finding that traveling results in a lost opportunity to work on other cases. *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984); *see also Abbott-Burdick*, 2002 WL 34236885 at *19.

In this case, the Court finds that full compensation for travel time is justified. The Court agrees with the Seventh Circuit that The Lambert Firm's travel time represents a lost opportunity to work on other cases. By submitting billing entries related to travel, The Lambert Firm is certifying to the Court that the time was not billed in other cases. Accordingly, these entries represent time when the attorneys were not working on other cases, building relationships with clients, or seeking out new clients, as they might have done had they not been travelling.

ORDER - 23

In addition, Relators chose to retain The Lambert Firm, rather than a local firm. This decision resulted in significant travel by The Lambert Firm attorneys between Louisiana and the Eastern District of Washington. Such travel would not have been necessary had Relators retained local counsel. Thus, Defendants may have been able to object to a full rate being billed for this travel time, but Mr. Brunson, as one of the Relators who chose to hire an out-of-district law firm, cannot object to this billing technique. Accordingly, the Court finds that the rate and time billed for travel is reasonable and need not be reduced.

4.    Reasonable Hours

The next component of the lodestar approach is determining the reasonable number of hours expended. To determine the reasonable number of hours, the court must review detailed time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative, or excessive. *Chalmers*, 796 F.2d at 1210. "There is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. "The court necessarily has discretion in making this equitable judgment." *Id.* at 437. "By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he [or she] was required to spend on the case." *Ryan v. Editions Ltd. W.*, 786 F.3d 754, 763 (9th Cir. 2015) (alterations in *Ryan*) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

ORDER - 24

When a party is only partly successful, attorneys should be compensated under the fee-shifting statute only for time spent on the successful claims, but, despite this general rule, parties must be compensated for fees "incurred for services that contribute to the ultimate victory in the lawsuit." *Cabrales*, 935 F.2d at 1052. "Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Id.*

Mr. Brunson challenges the hours expended by counsel for Relators and argues that the hours should be reduced based on duplicative billing and because Relators were only successful on some of their claims. ECF No. 105 Ex. A. Specifically, Mr. Brunson reports that there are 854 entries within the 5,644 billing fields in which two or more billers claimed to have participated in the same billing activity, which indicates duplicative billing for 15.13 percent of the billing entries. Mr. Brunson also argues that the Government intervened in only 22 percent of the allegations in the amended complaint, and reports that only 25 percent of the billing entries by The Lambert Firm reflect work on those claims. Mr. Brunson suggests that Relators had a success rate of only 12.5 percent because the alleged fraud was of least $1 billion and the settlement was for $125 million.

Relators respond that apparently duplicative billing entries reflect division of labor necessary to meet Government-imposed deadlines involving thousands of pages of documents and no true duplication occurred. ECF No. 116. Relators also argue that it is

1  inaccurate to suggest that Relators were only partly successful when

2  all of their claims were resolved through settlement. ECF No. 116.

3  Instead, Relators argue that the $125 million settlement obtained in

4  this case was an excellent result justifying full compensation.

5      The Court generally does not find Mr. Brunson's arguments

6  persuasive on this point. While many of the billing entries are

7  apparently duplicative, the Court understands that counsel for

8  Relators were required to process a substantial amount of material,

9  often on tight deadlines, as is made clear by the billing records. The

10  fact that tasks took more time or personnel than would be required in

11  a more straightforward case is explained by the quantity of material

12  involved and the complexity of the issues in this case. *Cf. Palmer*,

13  2017 WL 1477123, at *6 ("Relator's counsel gives no compelling

14  explanation as to why so many people were involved in the process, why

15  electronic means for searching were not used, why 'cast-the-widest-

16  possible-net' was the proper approach and what efforts were made but

17  rejected (and why) to expedite and economize this task through other

18  means."). There is no reason to believe that The Lambert Firm could

19  have proceeded more efficiently in reviewing and processing the

20  millions of pages of documents in this case or that the hours billed

21  by the firm in performing these tasks were otherwise unnecessary.

22      Mr. Brunson also fails to point to the specific portions of work

23  that he considers duplicative. The fact that there are reportedly 854

24  entries in the billing records with the same description as other

25  entries fails to demonstrate to the Court that such entries represent

26  the duplication of work, rather than the appropriate division of labor

1  between members of the trial team. *See Poulton*, 87 F. Supp. 2d at 358

2  ("[T]he unspecified opposition to duplicative billing is insufficient

3  grounds for reduction in the fee.").

4      During the Court's independent review of the billing records,

5  however, the Court did note entries that appear to be true duplicates.

6  On January 29, 2013, Diane Latta billed two entries describing the

7  exact same ten tasks, with each entry reflecting 3 hours of time

8  expended. One of these entries will be deleted as a duplicate and the

9  $300 billed for the duplicate entry will be subtracted. In addition,

10 on June 18, 2014, Ms. Mangat entered two billings for meetings with

11 Andrew Baker on the same topic, for .3 of an hour each, with one entry

12 for a total of $68.75 and another entry for $90.75. As these entries

13 appear to be duplicates, the Court will delete the entry for $68.75.

14 On April 5, 2016, Ms. Jemison billed for two tasks for meeting with

15 Ms. Jeffcott on the same topic for .5 hours each. The Court finds that

16 these entries are likely duplicates and deletes one of the $112.50

17 entries. Finally, on August 24, 2016, Ms. Jeffcott included one

18 billing entry for meeting with Ms. Embleton and then included a block

19 bill entry that included the meeting with Ms. Embleton. Accordingly,

20 the Court will delete the entry for the stand-alone meeting with Ms.

21 Embleton billed for $322, and leave the block billing entry.

22     As to The Lambert Firm's success in representing Relators, the

23 Court finds that it would be impossible to separate out "successful"

24 claims from "unsuccessful" claims. While the Government only

25 intervened as to a portion of Relator's claims, there is no evidence

26 before the Court that the remaining claims were not meritorious, and

the Court finds that those claims may have contributed to Defendants' decision to settle. *See Poulton*, 87 F. Supp. 2d at 357 ("Settlement does not determine which claims are meritorious, and effective work by Plaintiff's attorneys on all claims serves as fuel for productive settlement discussions."); *cf. McCartan*, 2005 WL 2416353, at *3–4 ("The reduction reflects the excessive hours spent drafting complaints, meeting with experts and pursuing legal theories that did not ultimately contribute to the settlement."). It would be inappropriate for the Court to retroactively evaluate which claims were meritorious.

Mr. Brunson's suggestion that the settlement amount indicates only limited success is unsupported by the record. Although the complaint indicated that fraud was committed in an amount exceeding $1 billion, that is an estimate subject to discovery and adjustment. After extensive production of information during years-long negotiations between the parties, and given their full knowledge of the claims and the likely outcomes at trial, the United States and all Relators agreed to settle their claims for $125 million, presumably because they believed such amount was fair payment for the claims involved.

In addition, success is not solely measured by monetary damages recovered, especially in False Claims Act cases and similar whistleblower lawsuits. *See Abbott-Burdick*, 2002 WL 34236885, at *11 ("In this Court's view, the compliance agreement is the key component of these settlements. Indeed, this Court likely would not have approved the *qui tam* settlement absent the aforementioned compliance

agreement."). The settlement here included important steps to ensure future compliance by Defendants.

Finally, it is important to note that Mr. Brunson himself chose to settle all of his claims and agreed that all claims be dismissed with prejudice. To now argue that this settlement was inadequate or represents a lack of success for Relators appears disingenuous given Mr. Brunson's agreement to dismiss his claims in exchange for the settlement award. Counsel for Mr. Brunson has zealously advocated this fee issue, perhaps because he has a financial interest in the outcome, *see* ECF No. 72-1 at 8 ("Mr. Brunson said that Mr. Guyer would get one-third of any increase in his award.").[2] Mr. Brunson's counsel in this dispute, however, was not privy to the negotiations in this matter or the millions of pages of documents produced over the course of negotiations.

    5.  Lodestar Calculation

The Court now applies the deductions previously found to be necessary to the amount billed by The Lambert Firm in order to calculate the appropriate lodestar amount.

Kaitlyn Rao has 55 billing entries for transcription work, for a total of 61.2 hours. At $75 per hour, this amounted to total of

---

[2] The extended statement by Mr. Tamosaitis is as follows: "[Mr. Brunson's] concern was totally focused on [the] han[dl]ing of the $4M. I asked him how much Mr. Guyer would get of his increased award if he was right. Mr. Brunson said that Mr. Guyer would get one-third of any increase in his award. I then went quickly through some math calculations and said 'Gary, it appears to me that if you are right, you will gross about $900K more of which you will give about $350K to the IRS and $300K to Mr. Guyer, leaving you about $250K. So you are risking big impacts on the Q/T award for only about $250K'. I further pointed out to Mr. Brunson that his possible $250K was only about 4% of the potential Q/T award we were anticipating so he was putting at risk over $5M for only about $250K." ECF No. 72-1 at 8.

1    $4,590. At the new, reduced rate of $60 per hour, the total will be

2    $3,672. Accordingly, the total fee indicated by The Lambert firm is

3    reduced by $918 based on this reduced in the transcript fee rate.

4        Ms. Embleton billed 305.4 hours at a rate of $275 per hour for

5    work performed before she was admitted to the bar, for a total of

6    $83,985. At the reduced rate of $175 per hour approved by the Court,

7    the new total is $53,445, for a total reduction of $30,540.

8        Ms. Mangat billed 466.2 hours[3] at a rate of $275 per hour for

9    work performed before she was admitted to the bar, for a total of

10   $128,205. At the reduced rate of $175 per hour approved by the Court,

11   the new total is $81,585. This results in a reduction of $46,620.

12       Ms. Klemmer billed 565.3 hours[4] at a rate of $225 per hour for

13   work performed before being admitted to the bar, for a total of

14   $127,192.50. At the Court-approved rate of $175 per hour, the new

15   total is $98,927.5. This results in a reduction of $28,265.

16       Ms. Jemison billed 2,066.2 hours at a rate of $225 for work

17   performed before she earned her Juris Doctor, for a total of $464,895.

18   At the reduced rate of $100 per hour for law clerk work, the new total

19   is $206,620, resulting in a reduction of $258,275. Ms. Jemison also

20   billed 239.3 hours at a rate of $225 per hour after earning her Juris

21   Doctor, but before being admitted to the bar, for a total of

22

23   ───────────────────
     [3] Four hours billed by Ms. Mangat for transcription work during the period

24   before she was admitted to the bar are not included in this total because
     they are accounted for below and billed at the rate for clerical work. .3

25   hours billed by Ms. Mangat are also removed from this total because that time
     is deleted below as a duplicate entry.

26   [4] 4.5 hours billed by Ms. Klemmer for a document searching task and fixing a
     "Women in the Profession logo." This amount is subtracted below as time not
     properly billed to this case.

1  $53,842.50. At the reduced rate of $200 per hour, the new total is

2  $47,860. This results in a reduction of $5,982.50.

3       In addition, as indicated above, the entries for work that was

4  billed at attorney rates, but should have been billed at clerical

5  rates, will result in a reduction. The one hour billed by Ms. Jeffcott

6  for confirming filing and submitted the filing will be reduced by $290

7  to $60. The .9 hours billed by Ms. Jeffcot for booking flights for Mr.

8  Lambert and herself and for rebooking Mr. Lambert's flight will be

9  reduced by $167 and $97.5, respectively, for new total bills of $36

10 and $18. The four hours billed for transcription tasks by Ms. Mangat

11 will be reduced by $860 for a new total bill of $240.

12      For the two tasks that the Court found to be unrelated to this

13 case, the Court subtracts $257.25 based on the amount billed for

14 computer problems. The Court will also subtract the $1,012.50 entry

15 related to "Women in the Profession."

16      Finally, regarding duplicative entries, based on the Court's

17 finding above, the Court will subtract $803.25 ($300 + $68.85 + 112.50

18 + 322).

19      This results in a total reduction of $374,088. The Lambert

20 Firm's total fees billed were $4,114,771.33. The reduction results in

21 a lodestar amount of $3,740,683.33.

22      6.   Reasonable Total

23      The Court now analyzes whether the lodestar amount is reasonable

24 based on the *Kerr* factors, or whether an increase or reduction to the

25 amount would be appropriate.

26 /

ORDER - 31

The *Kerr* factors are as follows:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Gonzalez*, 729 F.3d at 1209 n. 11 (quoting *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

The Court will first look to other qui tam cases in which courts determined that reduction of fees was appropriate. In *Doe v. Biotronik, Inc.*, the District Court for the Eastern District of California found that a 20 percent reduction to the attorney fee amount was appropriate based on lack of success in a qui tam action when the defendant agreed to settle all claims, the settlement was only related to one of ten claims in the complaint, the other claims were dissimilar to the settled claims, and the complaint included allegations in 25 jurisdictions, but only one state and the federal government intervened. 2015 WL 6447489, at *10. Similarly, in *Palmer*, the District Court for the Eastern District of Pennsylvania applied a ten percent reduction when "Relator and his counsel achieved only very modest results." 2017 WL 1477123, at *10. In that case, the relator obtained "a $1.7 million monetary settlement payment which was about 6% of the Relator's demand in his Second Amended Complaint and roughly $200,000 more than the first settlement demand at the start of the

case" and the settlement included no remediation regarding the fraud claims at issue. *Id.*

Alternatively, other courts have increased the lodestar amount in qui tam cases. In *Davita Healthcare Partners*, the District Court for the District of Colorado found that a lodestar multiplier of 3 was appropriate, for a total award of $6,094,347 for 3,303.2 hours of work, due to "the significant risk [Plaintiff's counsel] assumed by taking this case on contingency," the "scope and nature of the work," and the complexity of the action, despite the fact that the case ended in a settlement that included no monetary recovery for Plaintiff apart from attorney fees. *In re Davita Healthcare Partners, Inc.*, No. 12-cv-2074, 2015 WL 3582265, at * 5 (D. Colo. June 5, 2015). In *Poulton*, the District Court for the District of Vermont awarded a ten percent upward adjustment to the lodestar based on the substantial risk involved in the case and the fact that the case was declined by other attorneys, despite the fact that "Plaintiff's attorneys [had] already recovered handsomely through their contingency fee arrangement." 87 F. Supp. 2d at 359. The Supreme Court has indicated that an upward adjustment of one-third of the lodestar is appropriate when a district court finds that "there was a real risk-of-not-prevailing issue in the case, an upward adjustment of the lodestar." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 730 (1987) (plurality opinion).

Finally, many courts have determined in qui tam cases that fee awards should not be increased or decreased based on grounds suggested by the parties. In *Abbott-Burdick*, the District Court for the District

of South Carolina determined that no adjustment to the lodestar was necessary. 2002 WL 34236885, at *11. In that case, defendants had requested that the court reduce the fee amount based on lack of success, but the court found that no such reduction was appropriate because, although the $5.2 million settlement was much less than the $780 million of damages alleged in the complaint, the qui tam and retaliation settlements, including a compliance agreement from defendants, were "significant results made possible by and through the relators' efforts." *Id.* The Court concluded that "the results obtained, while substantial, do not warrant an upward adjustment to the lodestar." *Id.* Similarly, in *Poulton*, the defendants argued that fees should be reduced because counsel for the relators did not play a significant role in the case. 87 F. Supp. 2d at 355. The Court declined to reduce the fee award on that ground — and in fact increased the award, as explained above — finding that the relator's attorneys were "very valuable" to the Government, "were actively involved" with the claims, the relator award "evince[d] the government's acknowledgment of the important role Dr. Poulton and his counsel played in the investigation of this case," and the case resulted in a global settlement. *Id.* at 355-56. In *United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, the District Court for the District of Colorado explained that "the existence of a contingent fee agreement between [the plaintiff] and his counsel does not justify reducing the lodestar amount of attorneys' fees owed by the Defendant under 31 U.S.C. § 3730(d)(2)." 793 F. Supp. 2d 1260, 1264 (D. Colo. 2011).

1    With the above cases in mind, the Court now applies the *Kerr*
2  factors. First, there is no doubt that The Lambert Firm expended
3  substantial time and labor over the four-and-a-half years of this
4  case. This is reflected in the billing records for over 14,000 hours
5  of work and the accounts of reviewing millions of pages of documents.
6  This case also presented extremely complicated and technical legal
7  issues that required skill on the part of The Lambert Firm attorneys.
8  The Court further finds that the attorneys working on this case were
9  largely precluded from performing other work due to the number of
10 hours expended on this case. Multiple associates indicate that they
11 were hired exclusively to work on this case.

12    The Court does not have evidence before it of the customary fee
13 charged by The Lambert Firm attorneys and finds that this factor does
14 not weigh heavily either way, as the Court has engaged in a full
15 analysis of reasonable fees. The Court also declines to consider the
16 contingent nature of the fee in this case due to the fact that The
17 Lambert Firm is receiving a separate contingent fee award, apart from
18 the fee reflected in this lodestar calculation. Still, the Court does
19 note that there was a substantial risk of nonpayment in this case
20 based on the risk of nonintervention by the Government and the effect
21 that nonintervention could have had on settlement and on Relators'
22 ability to proceed to trial. There was evidence in this case that the
23 Government had at one time decided not to intervene, so the risk of
24 nonintervention and no recovery was a significant factor in this case.

25    The Court also finds that there were some time limitations in
26 this case for presentations to the Government and Defendants. The

amount involved in this case, as reflected in the complaint, was estimated at over $1 billion of fraudulent activity, and the settlement was for $125 million and resulted in additional monitoring of and restrictions on Defendants' activities. As explained above, while Mr. Brunson now argues that the settlement represents a lack of success, the Court finds that the settlement demonstrates significant success on the part of Relators.

Regarding the experience, reputation, and ability of the attorneys, as the Court explained above, Hugh Lambert has a background in science and significant experience with complex litigation and Ms. Jeffcott has received recognition in multiple instances as a "Super Lawyer," among other things, and had qui tam experience prior to this case. Much of the rest of the trial team, however, while possessing skills and experience that made them capable of processing the complex information in this case, had little legal experience prior to working on this case.

This case may have been undesirable to other law firms given the complexity of the issues involved, the extraordinary time requirements, and the uncertainty of success or payment, but no evidence that this case was actually undesirable to other law firms is before the Court. In addition, based on the limited information before the Court, the nature and the length of the professional relationship with the clients seem to simply involve interactions during the lengthy course of this case.

As to fee awards in similar cases, it is difficult to compare awards between qui tam cases because the nature of the claims, the

amount of time expended, and the size of the award vary significantly. Nonetheless, the Court includes some examples of False Claims Act qui tam statutory attorney fee awards that have been approved by other courts. For cases within the Ninth Circuit, in *Northeast Med. Servs.*, the District Court for the Northern District of California recently approved an award of $362,625 for 580.2 hours performed by one attorney and an award of $23,883 for 83.8 hours performed by another attorney in a qui tam case in which resulted in a total settlement of $8 million. 2016 WL 629019 at *4; *see also Marchese*, 2008 WL 4950938, at *2 (awarding $344,503.12, $198,290.94, and $13,975, respectively, to three firms based on rates of $375/hour for partners, $250/hour for associates, and $120/hour for paralegals); *Baran*, 2015 WL 6745151, at *1 (approving an award of $52,900 in statutory fees for 148.5 hours of attorney work in a qui tam action that ended in a default judgment against the defendant with an award of approximately $164,269 to Plaintiff); *see generally McCartan*, 2005 WL 2416353 (approving a qui tam statutory attorney fee award of $45,000 for 200 hours worked at a rate of $225 per hour). In *Abbott-Burdick*, the District Court for the District of South Carolina approved a fee award of $2,057,701.60 for 11,674.37 hours of work in a qui tam action involving a settlement amount of $5.2 million with 23 percent of the award going to relators. 2002 WL 34236885, at *22. Extrapolating from these cases, and considering differences in settlement amounts and time expended, as well as the general increase in attorney fees over time, the Court finds that the lodestar amount is reconcilable with the above awards.

In sum, a number of the *Kerr* factors could weigh in favor of increasing the lodestar calculation, while others indicate that an increase is not necessary. The Court finds that no factor clearly supports decreasing the lodestar amount. The Court finds that the majority of the factors — particularly attorney skill, complexity and difficulty of the case, and time expended on the case — are adequately reflected by the fee rates for each attorney and the total hours expended. *See Dague*, 505 U.S. at 563. Accordingly, the Court declines to increase or decrease the lodestar amount.

The Court therefore finds that the amount of statutory fees appropriate under the lodestar approach is $3,740,683.33. A portion of the difference between the fees requested by Relators and this new total has already been accounted for by the reduction negotiated between Defendants and Relators. Still, the new total of $3,740,683.33 is $104,550.21 less than the $3,845,233.54 paid by Defendants under 31 U.S.C. § 3730(d)(2). Accordingly, The Lambert Firm is not entitled to this overpayment amount of $104,550.21 and that sum is to be distributed to Relators.

### IV.    <u>REASONABLENESS OF OVERALL FEE</u>

Having determined that a reasonable statutory fee in this matter is $3,740,683.33, the Court now examines the reasonableness of the total fee award claimed by counsel in this case. *See Venegas v. Skaggs*, 867 F.2d at 533. In addition to the statutory fee award, The Lambert Firm has claimed entitlement to one-third of the Relators' share of the settlement award based on a contingent fee agreement between the Firm and Relators. This Court previously found that The

Lambert Firm was entitled to both statutory fees and a contingent fee based on the terms of its fee agreement with Relators. *See* ECF No. 95. The total award to Relators under the settlement agreement was $25 million, of which one-third would be $8,333,333.33. Adding this contingent fee to the lodestar amount determined above, the total award would be $12,074,016.66. As explained below, the Court finds that this amount is reasonable.

The Supreme Court has explained that "[c]ourts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have appropriately reduced the attorney's recovery based on the character of the representation and the results the representative achieved." *Gisbrecht*, 535 U.S. at 808. Interpreting the Supreme Court's holding in *Gisbrecht*, the Fourth Circuit noted that "[t]he Court did not provide a definitive list of factors to be considered [in the reasonableness analysis] because it recognized that the '[j]udges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts.'" *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005) (quoting *Gisbrecht*, 535 U.S. at 808), *cited with approval by Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009).

In *Venegas v. Skaggs*, the Ninth Circuit approved a 40 percent contingent fee award in a § 1988 civil rights case, and the Supreme Court affirmed that award. 867 F.2d at 534. The Ninth Circuit explained that the district court had properly exercised its discretion by awarding a 40 percent contingent fee based on the district court's finding that such a fee was reasonable due to the

risk of nonrecovery in the case. *Id.* In upholding the fee award, the Ninth Circuit also noted that it had previously recognized that the case involved a difficult question of credibility. *Id.*

In qui tam cases, courts have similarly concluded that the risk involved justifies a high fee. For example, in *United States v. Cooper Health System*, the District Court for the District of New Jersey found that a 41 percent fee — composed of a statutory fee award and a 30 percent contingent fee award — was appropriate. 940 F. Supp. 2d 208, 217–18 (D.N.J. 2013). The court explained that the fee amount was reasonable due to the "legitimate risk of non-payment in *qui tam* cases," and because "litigating cases under the *qui tam* provisions of the Federal False Claims Act can often take many years." *Id.* at 218. Further, the court noted that "[i]n the instant case, it took the Government five years to intervene," during which time the relators' firm was not being paid and "faced a substantial risk of receiving no payment" if the Government declined to intervene. *Id.* The court also found that the 41 percent award was not excessive compared to relators' shares and was "perfectly in line with the fee received by lawyers in *qui tam* cases across the country." *Id.* at 217–18

Other courts have also indicated that contingency fees combined with a statutory fee award can represent a reasonable fee award to qui tam counsel. *See, e.g.*, *United States ex rel. Lefan v. Gen. Elec. Co.*, 394 F. App'x. 265, 272 (6th Cir. 2010) (stating that an attorney's contingency fee award was "in addition to" statutory attorney fees and cost reimbursements); *United States ex rel. Alderson v. Quorum Health Grp., Inc.*, 171 F. Supp. 2d 1323, 1335 n.35 (M.D. Fla. 2001)

1 (rejecting the argument that an award of statutory fees would

2 represent a windfall to a relator's attorney who also recovered a

3 contingent fee because "to obtain the necessary professional advice

4 and assistance, [relator] remains free to distribute his recovery as

5 he sees fit"); *Poulton*, 87 F. Supp. 2d at 359 (granting an upward

6 adjustment of lodestar under § 3730(d)(1) even though attorneys had

7 "already recovered handsomely through their contingency fee

8 arrangement"); *United States ex rel. Doe I v. Pa. Blue Shield,* 54

9 F. Supp. 2d 410, 413 (E.D. Pa. 1999) (awarding statutory fees under

10 § 3730(d)(1) even though relators had already paid a 40 percent

11 contingency fee); *Bagley v. United States*, No. CV 10-483-GHK, 2011 WL

12 13128158, at *1 (C.D. Cal. June 30, 2011) (noting in a collateral

13 proceeding that Plaintiff had previously received $27.5 million as a

14 qui tam award, of which one-third was paid to counsel as a contingency

15 fee, and that counsel also obtained $9.4 million in attorney fees,

16 costs, and expenses under 31 U.S.C. § 3730(d)(1)).

17     Here, the Court finds that the award of $12,074,016.66 to

18 Relators' counsel is reasonable. Like in *Cooper*, The Lambert firm

19 faced a significant risk of nonpayment in this case, given the nature

20 of qui tam cases in general and the unique, complex facts of this

21 case. The fee agreement between The Lambert Firm and Relators

22 expressly stated that Relators were not obligated to pay the Firm, or

23 even to reimburse the Firm for reasonable costs, unless a recovery was

24 obtained. Therefore, over the four-and-a-half years of this case, The

25 Lambert Firm paid all of the costs of litigation upfront, with the

26 possibility that such costs would never be recouped. Nonpayment was a

real risk in this case, as the Government at one point went as far as to indicate that it did not intend to intervene. The risk, duration, and complex nature of this case justify a substantial fee.

The Court also finds that the fee of 41.6 percent of the Relators' total award is reasonable when compared to similar cases such as the 41 percent fee awarded in *Cooper* and the 40 percent fee approved in *Venegas*. Finally, the fee amount is reasonable when compared with the award obtained by Relators. Relators were awarded $25 million through the settlement and $4 million in statutory fees and costs. The fee award is 41.6 percent of the $29 million total. Each of the three Relators received $5,555,555.55, for a total award to Relators of $16,666,666.67, 58 percent of the $29 million total.

The Court therefore finds that the overall fee of $12,074,016.66 is reasonable. This is $104,550.21 less than the amount claimed by The Lambert Firm, and such amount should therefore be distributed between the Relators.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Relator Gary Brunson's Motion to Determine Reasonable Attorney Fees, ECF No. 79, is **GRANTED** insofar as the Court has determined the reasonableness of attorney fees, and **DENIED** to the extent that Mr. Brunson requests reductions of fees beyond those found to be appropriate by the Court.

2.    The $104,550.21 of claimed fees to which the Court has found that The Lambert Firm is not entitled are to be distributed between the three Relators equally.

**3.**     As the Court has previously dismissed the substantive claims in this case, *see* ECF Nos. 81 & 132, and the Court has now adjudicated the issues over which it maintained jurisdiction, the case shall be **CLOSED.**

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this   26th   day of June 2017.

s/Edward F. Shea
———————————————
EDWARD F. SHEA
Senior United States District Judge
